**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FILED
APR 21 2011
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

DEORANIE SEEBARAN,

    Debtor.
_____/

Case No. 6:08-bk-12211-ABB
Chapter 7

NARINDA SINGH,

    Plaintiff,

v.

DEORANIE SEEBARAN,

    Defendant.
_____/

Adv. Pro. No. 6:09-ap-00104-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Complaint (Doc. No. 1) filed by the Plaintiff Narinda Singh against the Defendant/Debtor Deoranie Seebaran ("Debtor") requesting the: (i) Debtor's discharge be denied pursuant to 11 U.S.C. Section 727(a); (ii) the indebtedness arising from a Bank of America home equity line of credit be deemed nondischargeable pursuant to 11 U.S.C. Sections 523(a)(2) and 523(a)(4); and (iii) damages be awarded to Plaintiff pursuant to New Jersey statutory and common law.

The final evidentiary was held on January 5, 2011 at which the parties and their respective counsel appeared. The Court held the evidence open for the Debtor to produce telephone records and for the Plaintiff to present certified copies of his exhibits. An Order was entered on March 31, 2011 (Doc. No. 62) admitting various exhibits into evidence and inviting the Debtor to file a response to the Affidavit of Chanrowty

Ramnarine presented by Plaintiff. The Debtor did not file a response. This adversary proceeding is ready for a final adjudication.

Judgment is due to be entered in favor of Plaintiff and against the Debtor pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4) and judgment is due to be entered in favor of the Debtor and against Plaintiff on all remaining causes of action. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Bank of America Home Equity Line of Credit*

Plaintiff and the Debtor are cousins and grew up together in Guyana. They and their families immigrated to the United States and lived near each other in New Jersey for many years. Plaintiff and the Debtor are acquaintances, but are not close. Plaintiff's English language skills are limited; he can recognize written numbers, but cannot read words.

The Debtor, in 2006, was employed as a personal banker with Bank of America at a branch in Hackensack, New Jersey. The Debtor knew Plaintiff owned two houses, with one located at 133 Neptune Avenue, Jersey City, New Jersey 07305 ("Property"). The Property was unencumbered.

The Debtor and Plaintiff were at a party in New Jersey in September 2006 and the Debtor approached him about obtaining a home equity loan from Bank of America. She told him interest rates were low and a line of credit would allow him to purchase another

property in the future. Plaintiff did not have any accounts with Bank of America when the Debtor approached him. He agreed to obtain a line of credit with Bank of America.

The parties met a few days later on September 14, 2006 and, while sitting in the Debtor's truck, the Debtor presented Plaintiff with a home equity line of credit closing packet. Plaintiff signed various documents in the closing packet including:

(i) Bank of America Equity Maximizer Agreement and Disclosure Statement for a home equity line of credit of $100,000.00, Loan Number 688218O1286799, to be secured by a mortgage on the Property;

(ii) Optional Line Protection Plan Addendum;

(iii) Affiliated Business Arrangement Disclosure Statement;

(iv) Borrower's Limited Title Agreement;

(v) Notice of Insurance Requirements;

(vi) Home Equity Closing Instructions pursuant to which Plaintiff authorized Bank of America to make automatic payment withdrawals from a checking account designated as Account Number 999999999999;

(vii) 1-4 Family Rider; and

(viii) a Mortgage granting Bank of America a security interest in the Property in the amount of $100,000.00. The Mortgage was recorded by Bank of America in the Hudson County land records on November 3, 2006.[1]

No other persons were present when Plaintiff executed the documents in the Debtor's truck. Plaintiff did not go to Bank of America's offices nor was he asked to go to the bank's offices.

The Debtor took the executed documents to her Bank of America branch office on September 15, 2006 and had her colleague Karyn Romero, an assistant manager at the

---

[1] Pl's Exs. 1, 2; Doc. No. 50.

3

branch, notarize Plaintiff's signature on the Mortgage. Ms. Romero certified Plaintiff had personally appeared before her and executed the Mortgage in her presence on September 14, 2006. The notarization was fraudulent. Plaintiff does not know and has not ever met Ms. Romero. Ms. Romero notarized the Mortgage based upon her personal relationship with the Debtor. The Debtor testified it was common practice at their branch office to notarize documents for each other without the signing party being present.

The documents executed by Plaintiff listed his home address as the address for communications from Bank of America. The Debtor, on or about September 15, 2006, changed the contact address to her home address so that all statements and correspondence regarding the home equity line of credit would be delivered to her and not to Plaintiff.

The Debtor, on September 15, 2006, caused a Campus Edge checking account, Account No. 381000941448, to be opened in Plaintiff's name ("Checking Account"). She then amended the Acknowledgement and Authorization executed by the Debtor, which allowed Bank of America to make automatic withdrawals, to change the fictional account number 9999999999999 to account number 381000941448.

The Personal Signature Card for the Checking Account contains the purported signature of "Narinda Singh." Plaintiff testified he did not open the Checking Account, did not sign the signature card, or authorize the Debtor to open the Checking Account. His testimony was credible and is corroborated by the documentary evidence. The Plaintiff's purported signature on the Personal Signature Card does not match his signatures on the Mortgage documents. The Debtor opened the Checking Account and

forged Plaintiff's signature on the signature card with the intent to access and use Plaintiff's $100,000.00 line of credit.

The Debtor, on September 15, 2006, caused $100,000.00 from the line of credit to be deposited into the Checking Account.[2] She, from September 15, 2006 through September 24, 2006, drew down the account through counter debits and an account transfer so that the Checking Account had a negative balance of -$90.30 on October 13, 2006. The Debtor admitted she made the following withdrawals from the Checking Account at her branch office:

    (i)    $20,000.00 on September 15, 2006 by counter debit;

    (ii)    $7,000.00 on September 15, 2006 by counter debit;

    (iii)    $23,400.00 on September 20, 2006 by counter debit;

    (iv)    $8,000.00 on September 22, 2006 by transfer to a checking account owned by the Debtor;

    (v)    $41,600.00 on September 25, 2006 by counter debit.[3]

The Debtor explained the withdrawals she made by counter debit were done by presenting a counter debit slip to a teller at her branch office and the teller withdrew the funds. She testified it was common practice at her branch for tellers to process counter debits and transfers requested by branch employees without verifying the transaction request with the named account holder. Each counter debit slip contained the purported signature of "Narinda Singh." Plaintiff did not sign the counter debit slips. The Debtor forged Plaintiff's name on the counter debit slips.

The Debtor took all of the line of credit funds and gave no funds to Plaintiff. She caused the Property to become encumbered by a $100,000.00 mortgage and Plaintiff to

---

[2] Pl's Ex. 5; Doc. No. 50.
[3] Pl's Exs. 5-9; Doc. No. 50.

5

be personally liable for repayment of the $100,000.00, plus interest, penalties, and late charges, pursuant to the Bank of America loan agreement.

Plaintiff testified he understood he was opening a line of credit by executing the line of credit documents in September 2006, but did not have a present intent to utilize the line of credit. He wanted the line of credit available to purchase another property in the future and believed the line of credit was being opened for that purpose. He did not make or authorize the withdrawals from the line of credit and had no knowledge of the Checking Account until October 2006. His testimony was credible.

The Debtor testified she, with Plaintiff's consent, withdrew the line of credit funds and used them to renovate and develop investment properties in New Jersey. She asserts she intended to repay Plaintiff upon the sale of the investment properties, but was unable to do so as a result of the economic downturn and loss of the properties to foreclosure sales. The Debtor asserts she communicated regularly with Plaintiff by telephone and advised him of each withdrawal and the status of the investment properties. She presented mobile telephone records allegedly documenting her frequent communications with Plaintiff. Plaintiff filed an Affidavit on March 24, 2011 (Doc. No. 61) executed by Chanrowty Ramnarine, Plaintiff's mother, in which she disputes the calls were made by the Debtor to Plaintiff, but to her.

The Debtor's testimony was not credible. She lacked credibility throughout the trial. She could not provide specific information, either verbally or through documentary evidence, supporting her contentions the line of credit funds were intended for and used for a real estate investment venture with Plaintiff. The telephone records do not establish

she had communications with Plaintiff and all of the records produced reflect telephone calls made *after* the line of credit funds had been fully expended.

*New Jersey State Court Litigation*

Plaintiff learned of the Checking Account and the line of credit withdrawals in October 2006—after the line of credit funds had been fully expended. He confronted the Debtor and she made promises to repay the funds. The Debtor was terminated by Bank of America in 2007 and she relocated to Kissimmee, Florida.

Plaintiff instituted litigation in 2009 against the Debtor, Bank of America, and others in the New Jersey State Court captioned *Narinda Singh v. Deoranie Seebaran, Bank of America, et al.*, Case No. HUD-L-1387-09. The State Court litigation was stayed as to the Debtor pursuant to 11 U.S.C. Section 362(a) by the Debtor's filing for Chapter 7 bankruptcy protection on December 22, 2008. The Debtor now lives in New York.

*Adversary Proceeding*

Plaintiff filed a seven-count Complaint alleging various causes of action against the Debtor pursuant to 11 U.S.C. Sections 727 and 523, New Jersey statutory law, and New Jersey common law. Plaintiff has the burden of proof on each cause of action.

*11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), and 727(a)(4)(A):* Plaintiff cites to 11 U.S.C. Sections 727(a)(2)(A), 727(a)(2)(B), and 727(a)(4) in Counts I, II, and IV. Count IV is duplicative of Count I. Plaintiff alleges: (i) the Debtor transferred and/or secreted assets with intent to hinder, delay, and defraud creditors; (ii) "the Debtor has made other false and misleading statements and omissions that discovery will disclose'; (iii) the listing of Plaintiff as a creditor in Schedule F constitutes a "false oath."[4]

---

[4] Doc. No. 1 at ¶¶ 7, 8, 12.

Plaintiff did not delineate what assets were allegedly transferred by the Debtor or what false statements and/or omissions she made in her bankruptcy case. Plaintiff was required to list any and all claims against her, including contingent, disputed, and unliquidated claims. She properly disclosed Plaintiff's claim against her in her Schedules. Plaintiff did not present evidence on its Section 727 causes of action at trial. Plaintiff did not establish the elements of 11 U.S.C. Section 727(a)(2)(A), 727(a)(2)(B), or 727(a)(4)(A). Judgment is due to be entered in favor of the Debtor and against Plaintiff on Counts I, II, and IV.

*Counts V, VI, and VII:* Plaintiff alleges the Debtor committed: (i) violations of the New Jersey Consumer Fraud Act; (ii) common law legal and equitable fraud; and (iii) theft. Plaintiff, in Count VII, seeks rescission of the Bank of America mortgage. Plaintiff's causes of action contained in Counts V, VI, and VII are based upon New Jersey statutory law and common law. A rescission action requires Bank of America to be named as a party defendant since Plaintiff is seeking to rescind the line of credit loan agreement.

Plaintiff did not establish the elements of these causes of action and they are matters to be adjudicated by the New Jersey State and/or United States Federal Courts. Judgment is due to be entered in favor of the Debtor and against Plaintiff on Counts V, VI, and VII.

*11 U.S.C. §§ 523(a)(2) and 523(a)(4):* Plaintiff alleges in Count III the Bank of America loan indebtedness is nondischargeable pursuant to 11 U.S.C. Sections 523(a)(2) and 523(a)(4). Plaintiff did not plead a specific subsection of 523(a)(2). His Section 523(a)(2) action, based upon the trial presentation, constitutes a Section 523(a)(2)(A)

cause of action. Plaintiff established the elements of 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4).

Plaintiff obtained the home equity line of credit based upon the Debtor's representations the line of credit would allow him to later purchase another property. He did not intend to use the line of credit in September 2006, but believed, based on Plaintiff's representations, it was financially advantageous to him to have the line of credit in place. Plaintiff trusted the Debtor and relied upon her representations. She is a relative and is knowledgeable about financial matters through her Bank of America employment. Plaintiff's reliance on the Debtor's representations was justified.

The totality of the circumstances establishes the Debtor acted with the intent to deceive Plaintiff. The Debtor's representations to Plaintiff were fraudulent because she intended, when she first approached Plaintiff, to induce Plaintiff to obtain a $100,000.00 home equity line of credit and misappropriate the loan funds for her own personal benefit. She misappropriated the line of credit funds through fraudulent misrepresentations, forgery, fraudulent notarization of documents, and abuse of her position at Bank of America. She attempted to conceal her actions by directing the line of credit communications to her home address.

The Debtor's Schedules and Statement of Financial Affairs reveal it was her pattern and practice to obtain significant sums of money from individuals for alleged personal loans for down payments on houses and house expenses.[5] The Debtor listed general unsecured debts totaling $448,895.88 in Schedule F. Ninety-two percent, or $415,000.00, of her general unsecured debt total is comprised of sums obtained by the Debtor from individuals for personal loans: (i) $14,000.00 from Dwight Abbott; (ii)

---

[5] Main Case Doc. No. 1, Schedule F.

$18,000.00 from Juan Hidalgo; (iii) $15,000.00 from Juliet Khan; (iv) $40,000.00 from Kemil Baig; (v) $20,000.00 from Lucezia Cabeza; (vi) $200,000.00 from Plaintiff; (vii) $8,000.00 from Rattie Chumawattee Naidoo; (viii) $10,000.00 from Sabita Singh; (ix) $90,000.00 from Sancharie Persaud-Goutam.

The Debtor committed larceny. She fraudulently induced Plaintiff to obtain the $100,000.00 line of credit with the intent to misappropriate the funds. She took Plaintiff's line of credit funds with the intent to convert the funds for her own personal use. Plaintiff did not consent to the Debtor's activation of the line of credit and withdrawal of the $100,000.00.

Plaintiff suffered damages as a result of the Debtor's fraudulent misrepresentations and her commission of larceny which include: (i) the Property is or was encumbered by the Bank of America mortgage which reduced the equity in the Property by at least $100,000.00; (ii) Plaintiff is or was personally liable for the obligations due to Bank of America pursuant to the loan agreement including the loan amount of $100,000.00, plus interest, late charges, and any applicable penalties; and (iii) the attorneys' fees incurred by Plaintiff in the Debtor's bankruptcy proceeding and in the New Jersey State Court litigation.

Plaintiff did not establish the specific amount of his damages and did not address whether Bank of America, or any other entity or person, such as an insurance provider, has satisfied or written off the line of credit indebtedness or has satisfied the line of credit mortgage lien. These issues may still be subject to adjudication in the New Jersey State Court litigation, which was not stayed by the Debtor's bankruptcy filing as to Bank of America. To the extent Plaintiff's damages have been fully satisfied by Bank of America

or any other entity or person, he cannot seek recovery of those damages from the Debtor. To the extent Plaintiff's damages have been partially satisfied by Bank of America or any other entity or person, he may only seek recovery of the unsatisfied damages from the Debtor.

Any indebtedness Plaintiff owes to Bank of America pursuant to the line of credit agreement which has not been satisfied is nondischargeable as to the Debtor pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4). A Judgment is due to be entered in favor of Plaintiff and against the Debtor on Count III pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4). To the extent Plaintiff recovers damages from Bank of America or any other third party, he will be required to mark this Court's Judgment as satisfied.

## CONCLUSIONS OF LAW

The party objecting to discharge or the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to discharge and to dischargeability of a debt are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986). "[T]he reasons for denying a discharge must be real and substantial, not merely technical and conjectural." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994).

*Sections 727(a)(2)(A), 727(a)(2)(B), and 727(a)(4)(A):* A discharge shall be denied pursuant to Section 727(a)(4)(A) where "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. § 727(a)(4)(A). "A debtor has a paramount duty to consider all questions posed on a

11

statement or schedule carefully and see that the questions are answered completely in all respects." In re Sofro, 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990).

A discharge shall be denied pursuant to Section 727(a)(2)(A) where a debtor, with intent to hinder, delay, or defraud a creditor has, within one year of the petition date, transferred, removed, destroyed, mutilated, or concealed property of the debtor. 11 U.S.C. § 727(a)(2)(A). "Concealment" in relation to Section 727(a)(2)(A) "occurs when a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer." In re Greene, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (*citation omitted*).

Plaintiff did not present any evidence as to his Section 727(a) causes of action at trial. Plaintiff has not established a basis for denial of the Debtor's discharge pursuant to any provision of 11 U.S.C. Section 727(a).

*Counts V, VI, and VII:* Plaintiff alleges the Debtor violated New Jersey statutory and common law and seeks rescission of the Bank of America loan agreement. These causes of action are not relevant to a discharge objection or nondischargeability determination. Bank of America is a necessary party to a rescission action and was not named as a party defendant in the Complaint. The causes of action contained in Counts V, VI, and VII are matters to be adjudicated by the New Jersey State and/or New Jersey Federal Courts.

*11 U.S.C. § 523(a) Burden:* The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to discharge are to be strictly construed against the creditor and liberally in

favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

*11 U.S.C. § 523(a)(2)(A):* Plaintiff's cause of action cited as 11 U.S.C. Section 523(a)(2) constitutes a nondischargeability cause of action pursuant to Section 523(a)(2)(A). Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (1) Debtor made a false representation with the purpose and intent to deceive Plaintiff; (2) Plaintiff relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiff sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). Plaintiff must establish each of the four common law fraud elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of

13

the debtor . . . ." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. Id.

The creditor's reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

Plaintiff established the elements of Section 523(a)(2)(A) by a preponderance of the evidence. The totality of the circumstances establishes the Debtor acted with the intent to deceive Plaintiff when she approached him at the party and induced him to obtain a $100,000.00 line of credit with Bank of America with the Property pledged as collateral. The Debtor intended to misappropriate the $100,000.00 for her own personal benefit. She obtained the line of credit funds through fraudulent representations to the Debtor upon which he justifiably relied. She committed forgery, fraudulently notarized documents, and abused her position at Bank of America. Her fraud was ongoing as she directed all communications regarding the line of credit to her address in an effort to conceal her actions.

The indebtedness Plaintiff incurred relating to the Bank of America line of credit as a result of the Debtor's fraudulent actions is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A).

*11 U.S.C. § 523(a)(4):* Section 524(a)(4) of the Bankruptcy Code provides a debtor is not discharged from debts resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Embezzlement

and larceny constitute separate Section 524(a)(4) causes of action and do not require a finding of fiduciary capacity. McDowell v. Stein, 415 B.R. 584, 594 (S.D. Fla. 2009). A plaintiff, however, must establish fraud or fraudulent intent. In re Kelley, 84 B.R. 225, 231 (Bankr. M.D. Fla. 1988).

Plaintiff pled and presented a larceny cause of action pursuant to 11 U.S.C. Section 523(a)(4). Larceny is not defined by the Bankruptcy Code and the Courts employ the federal common law definition. Larceny, for purposes of a Section 523(a)(4) proceeding, "is the fraudulent taking and carrying away the property of another with intent to convert such property to his use without the consent of another." In re Pupello, 281 B.R. 763, 768 (Bankr. M.D. Fla. 2002). Larceny differs from embezzlement in that the original taking of the property must be unlawful. Id.

Plaintiff established by a preponderance of the evidence the Debtor, with fraudulent intent, induced Plaintiff to obtain the line of credit with the Property as collateral, and took Plaintiff's line of credit funds with the intent to convert the funds for her own personal use. Plaintiff did not consent to the Debtor's taking of the funds. Plaintiff has established the indebtedness arising from the Bank of America line of credit is nondischargeable pursuant to 11 U.S.C. Section 523(a)(4).

Plaintiff did not delineate the specific monetary damages he has incurred and whether those damages have been, or will be, satisfied by Bank of America or any other third party. Calculation of a nondischargeable judgment amount must include a deduction for any recovery of damages. In re Daleske, 49 B.R. 49, 51 (Bankr. Mo. 1985) (deducting the insurance recovery from the amount of funds converted to calculate the nondischargeable judgment amount). To the extent Plaintiff recovers damages from

Bank of America or any other third party, he will be required to mark this Court's Judgment as satisfied. In re Jones, 348 B.R. 715, 719 (Bankr. E.D. Va. 2006).

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the indebtedness arising from the September 14, 2006 Bank of America home equity line of credit is **NONDISCHARGEABLE** pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(4) to the extent such indebtedness has not been paid or satisfied; and it is further

**ORDERED, ADJUDGED and DECREED** that all other relief sought by Plaintiff in his Complaint is hereby **DENIED**; and it is

**ORDERED, ADJUDGED and DECREED** that a discharge is due to be entered in the Debtor's main case pursuant to 11 U.S.C. Section 727(a) and the Clerk of Court is hereby directed to enter a discharge.

A separate judgment consistent with these findings and conclusions shall be entered contemporaneously.

Dated this 21st day of April, 2011.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge